UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

J.C. individually, and all
others similarly situated,

    Plaintiff,

  v.

GENE RICHARDS, ANTHONY H.
OGOZALEK, JR., RANDALL
FREILING, DONNA CARNS,
KIMBERLY MORRELL, JENAI
JOHNSON, SGT. ROBERT WORRICK,
CHARLES GROVER, and BOROUGH
OF CLEMENTON,

    Defendants.

Civil No. 18-13947 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

J.C.
P.O. BOX 934
PHILADELPHIA, PA 19105

    *Pro se Plaintiff.*

GEORGE J. BOTCHEOS, JR.
GEORGE J. BOTCHEOS, CHARTERED
1202 LAUREL OAK ROAD
SUITE 208
VOORHEES, NJ 08043

    *Attorneys for Defendants.*

**HILLMAN**, District Judge

    This case concerns civil rights claims brought by pro se litigant J.C. ("Plaintiff") under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. This matter comes before the Court on motion of the Borough of Clementon, Donna Carns, Randall

Freiling, Charles Grover, Jenai Johnson, Kimberly Morrell, Anthony M. Ogozalek, Jr., Gene Richards, and Robert Worrick (collectively, "Defendants") to enforce a settlement agreement purportedly reached between the parties (ECF No. 18). Also, before the Court is Plaintiff's motion for sanctions against Defendants and their counsel (ECF No. 21). For the reasons expressed herein, Defendants' motion to enforce the parties' settlement agreement will be granted and Plaintiff's sanctions motion will be denied.

## BACKGROUND

On September 17, 2018, Plaintiff filed an initial complaint in this matter alleging that, in 2016, he received a citation for overgrown vegetation on his property, in violation of the Borough of Clementon's municipal code. A trial was apparently held concerning the code violation in the local municipal court and the charge was sustained.[1] The code violation allegedly involved a fine, court costs, and additional unspecified penalties. Plaintiff alleges various civil rights violations occurred during the investigation, prosecution, and attempted appeal of the underlying code violation case.

On October 31, 2019, Magistrate Judge Williams hosted the

---

[1] A lack of material in the record requires the Court to rely upon representations and statements made by the parties in their moving papers and during oral argument for much of the background predating the filing of this federal action.

2

parties for an initial conference in this matter.  Both sides appeared for that conference, which was largely held on the record.  Transcription of that proceeding reveals Magistrate Judge Williams not only conducted an initial conference with the parties but also facilitated discussions of an early resolution:

> THE COURT: Let's move forward.  You've received -- the client has received a demand. Have they responded to same?  Do they intend to respond to same?
>
> MR. BOTCHEOS: Judge, we actually received two demands. One demand was made in writing to the Borough before I was involved for $3,200.  And I did receive an email from the plaintiff last week, I believe demanding $3,600.  I did not respond to it.  I thought perhaps we would discuss that here today.
>
> THE COURT: Okay.  Is the Borough in a position to make an offer on the demand?
>
> MR. BOTCHEOS: I have some authority, Your Honor.
>
> THE COURT: . . . J.C., are you prepared to move forward in settlement discussions?
>
> J.C.: Yeah, sure.

(ECF No. 24, October 31, 2019 Transcript ("1T") at 27:3 – 28:3). Such began settlement negotiations.

Magistrate Judge Williams inquired of Plaintiff as to his demands and spoke separately with counsel for Defendants, with Plaintiff's permission, regarding the potential for reaching a resolution.  Plaintiff shared that he wanted a monetary figure and had concerns about whether the code violation for which he was charged would influence any future driving privileges or

3

whether a warrant would be issued for his arrest.  See 1T38:1 – 1T40:12.  There is nothing in the record to indicate why, or on what basis, Plaintiff thought a violation of a municipal code could cause such consequences.  However, in order to address Plaintiff's concerns, Magistrate Judge Williams indicated that "if we settle, I'm going to give you some time to confirm that those things don't exist."  (1T40:13-15).  To that, Plaintiff suggested his apprehensions about license or warrant issues would not be a barrier to settling the matter.  (1T40:16-20) ("yeah, I mean, I wasn't -- to be honest with you, I wasn't worried about that in terms of settlement at all.").

Returning to Plaintiff's monetary demands, Plaintiff acknowledged that he initially served Defendants with a demand for $3,600.  When asked if that number was his bottom line, however, Plaintiff acknowledged it wasn't, and indicated that he was willing to negotiate in good faith to reach a resolution.  See (1T41:12 - 1T42:11).  Plaintiff agreed to reduce his settlement demand to between $2,500 and $2,600 to facilitate a fair resolution to this action.  (1T42:11-15) ("But I'll tell you what, I'll take – I'll go down -- you know what, I'll go down to $2,600.  I'll knock a thousand off. . . .  But 2,600 I think that's more than fair"); (1T44:14-15) ("I would go down to twenty-five [hundred], I really can't -- I really can't go down less").  Plaintiff was unequivocal is his agreement to settle

4

the matter for $2,500.  (1T46:9-10) ("but I think – let's do 2,500.  Ask them for twenty-five.").  Defendants agreed to Plaintiff's demand.  See (1T47:6-7) ("THE COURT: I'm smelling a settlement.  J.C.: Oh, okay. That's good.").

Defendants could not, however, assuage Plaintiff's concerns about any potential collateral consequences of the code violation.  To allow Plaintiff an opportunity to investigate that matter further, Magistrate Judge Williams suggested a course accepted by the parties: the Court would enter a standard administrative termination order in light of the parties' agreement on a monetary settlement while Plaintiff determined whether any collateral consequences would attach.  See (1T50:4-13).  The parties agreed that, if some collateral consequence existed, and if Plaintiff could locate legal authority within the administrative termination period suggesting Defendants could recall Plaintiff's code violation through this collateral civil litigation, he could advise the Court of such authority and the Court would reopen the matter, vacate any settlement, and "start from zero."  See (1T50:15-18; 1T60:20-23).  Plaintiff agreed to proceed with that understanding.  See, e.g., (1T51:2-15) (exhibiting Plaintiff's agreement to proceed).  Defendants represented to the Court that they would draft a settlement agreement and general release for Plaintiff's

5

signature consistent with the agreement reached by the parties on the record. (1T55:11-19).

The Court explained to the parties that its administrative termination order would reflect that a settlement had been reached in principle and that the parties have "agreed to amicably resolve" this action. (1T63:11-16). Magistrate Judge Williams helpfully summarized the parties' agreement on the record:

> THE COURT: Good. We do have a resolution.
>
> MR. BOTCHEOS: Okay.
>
> THE COURT: The number is final at $2,500. The Court will enter a 60-day order. You, Mr. Botcheos, will provide the general release you've drafted to plaintiff after you fill in the number. Because I think you said that that was one of the things you have to fill out.
>
> MR. BOTCHEOS: I will do that, Judge. Just as soon as we're finished here.
>
> THE COURT: Plaintiff will provide a W-9. Plaintiff has raised some concerns about the availability of the Social Security Number. Which we know we have to have. However, as counsel, I'm directing you it's attorney's eyes only and whoever needs it to process the payment. So just two people.
>
> MR. BOTCHEOS: That's fine, Judge.
>
> THE COURT: All right.
>
> MR. BOTCHEOS: I'll ensure the Social Security remains confidential.
>
> THE COURT: Yes. During the 60-day period, plaintiff, if he finds legal [precedent] that this conviction can be vacated, he will send a letter to this Court

6

> advising the Court of the [precedent] he has found.
> Mr. Botcheos, you will review that [precedent] and
> provide the Court with why you support -- you, counsel
> for defense, support or object to the [precedent]. If
> there is agreement that the defendants cannot vacate
> the conviction that was entered on the property
> ordinance, then on day 60 – let's say 61 – I'll put
> date certain in the order -- this case will be
> dismissed by Judge Hillman, and plaintiff will be
> provided a check in the amount of $2,500 within seven
> days of that dismissal.

(1T67:13 – 1T68:18).

Thereafter, the parties exchanged draft settlement agreements and mutual releases. On November 13, 2019, counsel for Defendants received from Plaintiff a signed general release in the form it had approved, along with several addendums added by Plaintiff. (ECF No. 18-1, Declaration of George J. Botcheos, Esq. ("Botcheos Decl.") at ¶¶11-12). It appears Defendants accepted the addendums, which do not materially alter the parties' agreement.

As for a general release, both parties agreed to resolve this matter by amicable settlement, the material terms of which included Defendants' agreement to pay Plaintiff $2,500 within seven (7) days of Plaintiff returning a signed release and a W-9. (Botcheos Decl. at 13-14). In exchange, Plaintiff agreed to execute a stipulation of dismissal with prejudice and release Defendants of further liability for matters at issue in this action. Plaintiff agreed to such terms as indicated by his

7

notarized signature on the general release.  (Botcheos Decl. at 14-15, 19).

According to Defendants, Plaintiff never provided a W-9 or signed stipulation of dismissal.  As such, Defendants re-sent those documents to Plaintiff for execution.  See (Botcheos Decl. at 25).  Plaintiff objected to providing such documents until he received his check and, apparently, has continued in his refusal to sign them before receiving his check.  (Botcheos Decl. at 27).

On December 4, 2019, Defendants moved to enforce the parties' settlement agreement (ECF No. 18).  Despite opposition to that motion being due on December 23, 2019, Plaintiff filed late opposition to that motion on December 31, 2019 (ECF No. 20).  While the Court has authority to decline consideration of that late-filed opposition, the Court will accept Plaintiff's opposition and will consider it as if timely filed.  Also on December 31, 2019, Plaintiff moved for sanctions against Defendants and their counsel (ECF No. 21).  These motions are either fully briefed or the time within which to fully brief them has expired.  As such, they are ripe for adjudication.[2]

---

[2] Before proceeding to a discussion of the motions before the Court, the Court pauses to explain certain redactions in the record.  From the beginning of this litigation, Plaintiff has used insulting language and ad hominem attacks outside the bounds of civility expected of litigants in this Court.  Examples of such behavior appear in the present motion papers,

**ANALYSIS**

**A.   Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**B.   Standard Governing Motions To Enforce A Settlement**

A settlement agreement between parties to a lawsuit is treated like any other contract.  See Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990).  The interpretation of a contract is a question of law.  Travelers Property Casualty Company of America v. USA Container Co., Inc., 686 Fed. Appx. 105, 110-11 (3d Cir. 2017) (citing Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 46 A.3d 1272, 1276 (N.J. 2012)).  As such, "the party seeking to enforce the settlement agreement[ ] has the burden of proving[, as an initial matter,] the existence of the agreement under contract law."  Garde-Hill v. Cadbury at Cherry Hill, Inc., No. 15-cv-8865-NLH-JS, 2018 WL 2192706, at *2 (D.N.J. May 14, 2018) (quoting United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997)).  Once a valid contract has been shown to exist, courts interpret the agreement like they would any other contract, applying principles of contract law to determine whether a violation of its terms has

---

but they are not relevant to the present motions and further
reference to them – even if they are part of the relevant
documents – is unnecessary.  The Court will give them the
attention they deserve, which is to say they will be ignored.

9

occurred. Transportation Ins. Co. v. Am. Harvest Baking Co., Inc., No. 15-cv-663-NLH-AMD, 2018 WL 2215514, at *2 (D.N.J. May 15, 2018) (citing Kieffer v. Best Buy, 14 A.3d 737, 742 (N.J. 2011)).

The Third Circuit has summarized the analysis of a contract under New Jersey law as follows:

> Under New Jersey law, courts should enforce contracts as the parties intended, which is assessed by examining the plain language of the contract, the surrounding circumstances, and the purpose of the contract. In addition, contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous.... [A] court will not make a different or better contract than the parties themselves have seen fit to enter into.

Id. (quoting MacDonald v. CashCall, Inc., 883 F.3d 220, 228-29 (3d Cir. 2018)). Like any contract, however, settlement agreements are only enforceable if the parties "agree on essential terms, and manifest an intention to be bound by those terms." Garde-Hill, 2018 WL 2192706, at *2 (citation omitted). "New Jersey law specifies that parties may orally, by informal memorandum, or both, agree upon all essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the later execution of a formal document to memorialize their undertaking." Id. (quoting Lightman, 988 F. Supp. at 458, 459).

10

Where a valid settlement agreement exists, courts will not disturb that agreement absent compelling circumstances. Id.

### C. Defendants' Motion To Enforce The Parties' Settlement

Defendants have established the existence of a valid settlement agreement. The Court's analysis begins with the October 31, 2019 proceedings before Judge Williams. Plaintiff offered to resolve this matter for a sum of $2,500. (1T46:9-10) ("let's do 2,500. Ask them for twenty-five"). Defendants agreed to pay that sum to resolve the parties' dispute.

The Court finds this verbal agreement, recorded on the record before Magistrate Judge Williams, is sufficiently specific to create a binding contract. This conclusion is further supported by the parties' course of conduct following October 31, 2019. The parties entered into a binding settlement agreement, which Plaintiff signed in the presence of a notary, and that written agreement reflects the very same material facts that were reflected on the record on October 31, 2019. As such, the Court is satisfied that a binding agreement exists and may be enforced, the material terms of which are that Defendants shall pay Plaintiff $2,500 as full settlement of this action within seven (7) days of their receiving a signed stipulation of dismissal and completed W-9 from Plaintiff.

Separately, Plaintiff expressed concerns regarding possible collateral consequences from the underlying code violation and

11

requested the violation be vacated. Plaintiff was afforded an opportunity to locate authority evincing such a procedure could be accomplished through this or any collateral litigation, and the parties agreed to vacate their settlement and begin anew if such authority could be found. While Plaintiff argues that he has located such authority thereby requiring the settlement agreement be dissolved, the Court has reviewed the authority Plaintiff offers and finds it does not support the proposition Plaintiff argues it does.

Plaintiff cites Marek v. Chesny, 473 U.S. 1, 11, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985); Delta Air Lines, Inc. v. Aug., 450 U.S. 346, 352, 101 S. Ct. 1146, 67 L. Ed. 2d 287 (1981); Crandell v. United States, 703 F.2d 74, 75 (4th Cir. 1983); Puder v. Buechel, 874 A.2d 534 (N.J. 2005); and Morris Cty. Fair Hous. Council v. Boonton Twp., 484 A.2d 1302 (N.J. Super. Ct. Law. Div. 1984), aff'd, 506 A.2d 1284 (N.J. Super. Ct. App. Div. 1986) for the general proposition that courts favor and should encourage resolution of matters by settlement. See (ECF No. 20 at 9-11).

Additionally, Plaintiff cites Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983) and United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971) for the proposition that courts need not

inquire into the merits of any claim or the "legal rights" of a party before approving a settlement. (ECF No. 20 at 9).

Lastly, Plaintiff cites <u>Pacific Railroad v. Ketchum</u>, 101 U.S. 289, 297, 25 L. Ed. 932 (1879) for the general idea that "[p]arties to a suit have the right to agree to any thing they please in reference to the subject matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings." (ECF No. 20 at 10). Based upon that authority, Plaintiff argues "it cannot be disputed that the vacation of the bogus conviction furthers the public policy objective that favors private settlement of disputes." (ECF No. 20 at 11).

None of the authority Plaintiff directs this Court to supports a finding that parties to a federal civil action may agree to vacate a collateral state municipal court matter. The issue presented is whether Plaintiff has identified a procedural and legal basis to undo a fully adjudicated matter in a collateral court of another sovereign. He has not.

Plaintiff having failed to explain how his municipal code matter could be vacated as part of the parties' settlement agreement, despite a fair opportunity to do so, the Court finds the condition offered to him for vacatur of the settlement has not been satisfied. Moreover, it is clear from the record that

13

Plaintiff never considered eliminating the remote possibility of collateral consequences – to this day unidentified – a material term of the settlement in any event.  Accordingly, the Court will not upset the parties' agreement and must grant Defendants' motion to enforce the settlement.

Plaintiff will be ordered to provide Defendants with a signed notice of dismissal and a W-9 within thirty (30) days of this Opinion, and Defendants will be ordered to deliver payment in the amount of $2,500 to Plaintiff, as contemplated by the parties' agreement, within seven (7) days of receiving those documents.

    **D.   Plaintiff's Motion for Sanctions**

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court."  Dinnerstein v. Burlington Cty. Coll., No. 13-cv-5598-NLH-KMW, 2017 WL 5593776, at *8 (D.N.J. Nov. 21, 2017), aff'd, 764 F. App'x 214 (3d Cir. 2019) (quoting Brubaker Kitchens, Inc. v. Brown, 280 Fed. Appx. 174, 185 (3d Cir. 2008)); accord Scott Fin. Co. v. Andrews, No. 90-4574, 1991 WL 37883, at *2 (D.N.J. Mar. 18, 1991) ("Broad discretion is granted to the trial court to fashion sanctions under Rule 11.").  Rule 11 sanctions are "intended to be used only in 'exceptional' circumstances."  Id. (quoting Ferreri v.

14

<u>Fox, Rothschild, O'Brien & Frankel</u>, 690 F. Supp. 400, 405 (E.D. Pa. 1988)).

Plaintiff has not presented circumstances requiring imposition of sanctions. On the contrary, as set forth above, Defendants have demonstrated they are entitled to enforcement of the parties' settlement agreement. As such, Plaintiff's motion will be denied.

## **CONCLUSION**

For the reasons expressed above, Defendants' motion to enforce the parties' settlement agreement (ECF No. 18) will be granted. Plaintiff's motion for sanctions against Defendants and their counsel (ECF No. 21) will be denied.

An appropriate Order will be entered.

Date: September 10, 2020      s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.